IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LYNETTE HERRERA,

    Plaintiff,

v.                                                                                                1:18-cv-00763-JHR-KBM

JOSE SENA,
in his individual capacity,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

THIS MATTER comes before the Court on Defendant Jose Sena's *Motion to Dismiss Based on Death of Defendant*. [Doc 7]. The Court, having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises finds that the motion is well taken and should be granted.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

At the relevant time Plaintiff was an inmate at the Springer Correctional Facility in Springer, New Mexico and Mr. Sena was an officer with the New Mexico Corrections Department. [Doc. 1, ¶¶ 4-5]. Plaintiff alleges that she was the object of unwanted romantic and sexual advances by Mr. Sena. [Doc. 1, ¶¶ 6-7]. Plaintiff further alleges that Mr. Sena became angry that she did not return his apparent romantic and/or sexual interest in her and threatened that if Plaintiff did not "give in to his advances, he would take it out on her and other inmates." [Doc. 1, ¶ 8]. According to Plaintiff, Mr. Sena ultimately forced her into a staff bathroom, sexually assaulted her, and threatened to retaliate if she reported the incident. [Doc. 1, ¶¶ 9-11].

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter judgment in this case. [Doc. 3; Doc. 10; Doc. 11].

Plaintiff filed her *Complaint for Civil Rights Violations* ("Complaint") on August 9, 2018, asserting that Mr. Sena violated her "established constitutional right to be secure in her bodily integrity and free from sexual attacks by prison staff" thereby violating her rights under the Eighth Amendment to the United States Constitution. [Doc. 1, ¶¶ 20, 22]. Mr. Sena was served with a copy of the Complaint on August 14, 2018. [Doc. 3]. Mr. Sena passed away on August 24, 2018. [Doc. 6]. The *Motion to Dismiss Based on Death of Defendant* was filed on October 8, 2018. [Doc. 7]. The Motion, brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, raises three primary issues: (1) whether Plaintiff's claims under 42 U.S.C. § 1983 survive Mr. Sena's death, pursuant to the applicable New Mexico survival statute, NMSA 1978, § 37-2-4 (1884); (2) whether allowing the continuation of this § 1983 action deprives Defendant of substantive due process; and (3) whether allowing the continuation of this § 1983 action otherwise violates the United States Constitution.[2] [Doc 7].

## II. LEGAL STANDARD

Rule 12(b)(6) requires the Court to accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The complaint must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility

---

[2] Because the Court finds that Plaintiff's claim abates under Section 37-2-4, it need not address whether continuation of the claim deprives Defendant of due process or otherwise violates the United States Constitution.

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. ANALYSIS

### A. *The Relevant Law Governing the Survival of Plaintiff's Claims Under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by state government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under § 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

Although federal law determines whether a federal claim survives upon the death of a party, claims under § 1983 are silent on the issue of survivorship. Thus, in accordance with 42 U.S.C. § 1988, whether a § 1983 action abates at the death of a party is determined by the law of the forum

state, as long as that law is not "inconsistent with the federal policy underlying the cause of action under consideration."[3] *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978).

The application of state survival statutes to § 1983 cases has not always been clear. Perhaps this is because many were drafted[4] before the emergence of civil rights litigation under § 1983 which, despite being passed in 1871, "languished in relative obscurity until 1961, when the Supreme Court decided *Monroe v. Pape*[, 365 U.S. 167 (1961) ]." *Kaminski v. Coulter*, 865 F.3d 339, 345-46 (6th Cir. 2017); *see id.* at 346 ("*Monroe* opened the gates for § 1983 litigants, transforming the little-used statute into a powerful tool for checking abuses by state officials.").

The survivorship statute drafters may not have contemplated their application to such federal causes of action. To rectify this uncertainty, many of the circuit courts of appeals, including the Tenth Circuit, have attempted to insert § 1983 actions into the forum state's survivorship statute by analogizing the character of the claim at issue to its most closely-related common law counterpart. *See*, *e.g.*, *Brown v. Town of Cary*, 706 F.3d 294, 300 (4th Cir. 2013) ("Analogizing [the plaintiff's] federal civil rights claim to a corresponding action under North Carolina law, we are satisfied that the claim would survive under that statute."); *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (finding a § 1983 malicious prosecution action abated upon the death of the plaintiff where the state survival statute excepted malicious prosecution claims); *Caine v. Hardy*, 943 F.2d 1406, 1410-11 (5th Cir. 1991) (concluding that a § 1983 procedural due process case would not abate under Mississippi law because it was more akin to a wrongful discharge

---

[3] The policies underlying § 1983 include both (1) compensation of persons for injuries caused by deprivations of their federal rights and (2) deterrence of deprivation of rights. *See Robertson,* 436 U.S. at 590-91; *Carey v. Piphus,* 435 U.S. 247, 254-57 (1978). The application of § 1988 to § 1983 actions is not at issue in this case.

[4] New Mexico's survivorship statutes were drafted in 1884 and the Section applicable here has not been altered since. *See* NMSA 1978 § 37-2-1 (1941); NMSA 1978 § 37-2-4 (1884); *see also, e.g.*, Ala. Code § 6-5-462 (enacted in 1852); Ky. Rev. Stat. § 411.140 (enacted in 1942); S.C. Code Ann. § 15-5-90 (enacted in 1905); Tenn. Code Ann. § 20-5-102 (enacted in 1836)).

claim and thus "personal" within the meaning of the statute); *Parkerson v. Carrouth*, 782 F.2d 1449, 1451–53 (8th Cir. 1986) (affirming the district court's application of Arkansas's state survivorship statute, which causes a common law malicious prosecution claim to abate, to a § 1983 malicious prosecution action).

Here, there is no dispute that the survival of Plaintiff's federal claims under § 1983 are governed by New Mexico law. *See Robertson*, 436 U.S. at 590.; *Medina v. Pacheco*, 161 F.3d 18, *4 (10th Cir. 1998) (recognizing that survival of § 1983 actions after a party's death is governed by state law). In order to apply New Mexico law, the Court must properly analogize Plaintiff's § 1983 claims to the appropriate New Mexico torts. In doing so, the Court begins with the federal claim at issue. *See Robertson,* 436 U.S. at 588-90; *Bentz v. City of Kendallville*, 577 F.3d 776, 778-79 (7th Cir. 2009); *Pietrowski*, 134 F.3d at 1008; *Medina*, 161 F.3d 18, *4. The Court must first characterize that claim and then decide which New Mexico tort is the most similar, without molding the constitutional claim to fit within the contours of state law. *See Bentz*, 577 F.3d at 778-79. Only after arriving at an appropriate analogy does the Court turn to the New Mexico survival statutes to determine whether that claim should survive. *See* § 37-2-1; § 37-2-4.

### B. *Analogizing Plaintiff's § 1983 Claim to New Mexico Torts for Purposes of Abatement*

In her Complaint, Plaintiff alleges that Mr. Sena forced her into a staff bathroom, sexually assaulted her, and threatened to retaliate if she reported the incident. [Doc. 1, ¶¶ 9-11]. Plaintiff contends that her claim is analogous to a claim for intentional infliction of emotional distress (IIED) and/or false imprisonment, which would survive under the applicable New Mexico survival statute, or in the alternative that New Mexico law is unclear and the Court should certify the question to the New Mexico Supreme Court. [Doc. 14, pp. 5-8]. *See* Rule 12-607 NMRA (providing that federal courts may certify a question to the New Mexico Supreme Court if the

answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which an answer is not provided by a controlling appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals or a state constitutional provision or statute). Defendant, on the other hand, argues that Plaintiff's claim is most analogous to the New Mexico torts of assault and battery, which do not survive under the applicable survival statute. [Doc. 7, pp. 3-4].

The Court acknowledges that the facts alleged in Plaintiff's Complaint potentially implicate all three of these torts. To recover for IIED under New Mexico law, a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous under the circumstances; (2) the defendant acted intentionally or recklessly; and (3) the plaintiff experienced severe emotional distress as a result of the defendant's conduct. *See* UJI 13-1628 NMRA. "The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 173 P.3d 6).

The New Mexico, torts of assault and battery are elementally based upon the offenses of assault and battery as defined by the New Mexico criminal statutes. *State v. Ortega*, 1992-NMCA-003, ¶ 12, 113 N.M. 437, 827 P.2d 152 ("[T]he elements of civil and criminal assault and battery are essentially identical."). New Mexico defines assault as "an attempt to commit a battery" or "any unlawful act, threat, or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." NMSA 1978, § 30-3-1 (1963). Battery is defined as the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30-3-4 (1963). Thus, a tortfeasor is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person

of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *Ortega*, 1992-NMCA-003, ¶ 12.

The facts alleged in Plaintiff's Complaint could form the basis of IIED, false imprisonment, or assault and battery claims under New Mexico law. However, New Mexico tort law and the facts of this individual case are not at the core of the Court's abatement analysis. *See Bentz*, 577 F.3d at 778-79 ("Only after characterizing the federal claim do we decide which analogous [state] tort applies."); *see also Robertson,* 436 U.S. at 588-90; *Pietrowski*, 134 F.3d at 1008; *Medina*, 161 F.3d 18, *4. Federal law makes clear that the crux of a § 1983 claim arising from alleged sexual abuse or assault by jail or prison officials, whether framed as IIED, false imprisonment, or assault and battery, is whether the plaintiff's right "to be secure in her bodily integrity and free from attack by prison guards" has been violated. *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).

This recognized right is rooted in the language of the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" which manifests "an intention to limit the power of those entrusted with the criminal-law function of government." *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). The United States Supreme Court has stated that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (alteration in original) (internal quotation marks and citation omitted)). With regard to the treatment of prisoners in the custody of state of federal governments, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which serves "no legitimate penological interest." *Rhodes v. Chapman,* 452 U.S. 337, 345-346 (1981).

7

This prohibition encompasses sexual abuse or assault by jail or prison officials. *See e.g.*, *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."); *Banks v. Rozum*, 639 Fed.Appx. 778, 782 (3d Cir. 2016) (same); *Alberti v. Klevenhagen*, 790 F.2d 1220, 1223-24 (5th Cir. 1986) ("A prisoner has a right to be protected from the constant threat of violence and from sexual assault.") (internal quotation marks and citation omitted)); *Hovater*, 1 F.3d at 1068 (recognizing the right of prisoners to be free from sexual abuse/assault by prison officials).

The threshold question in this type of Eighth Amendment inquiry is whether a jail or prison official violated the plaintiff's right "to be secure in [his or] her bodily integrity and free from attack by prison guards." *Hovater*, 1 F.3d at 1068. The New Mexico torts of assault and battery have a similar focus; the plaintiff must show an "unlawful act, threat, or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery" or harmful or offensive contact resulting from an intent to cause such contact or an intent to create the imminent apprehension of such a contact. *See* § 30-3-1; *Ortega*, 1992-NMCA-003, ¶ 12.

Further, the elements of a § 1983 claim for arising out of sexual abuse or assault by a jail or prison official are consistent with the New Mexico torts of assault and battery. Claims involving sexual abuse of a prisoner by a jail or prison official are generally analyzed as excessive-force claims. *See Graham v. Sheriff of Logan Cty.*, 741 F.3d 1118, 1123 (10th Cir. 2013). Such claims involve a two-pronged analysis: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind."

*Id.* (internal quotation marks omitted).[5] Thus, a plaintiff may establish *both* a § 1983 claim arising out of sexual abuse or assault by a jail or prison official and a New Mexico battery claim by showing (1) sexual abuse by a jail or prison official where (2) the official acted with a culpable state of mind. *See Graham,* 741 F.3d at 1123; *Ortega*, 1992-NMCA-003, ¶ 12.

As previously noted, the facts alleged in Plaintiff's Complaint could form the basis for IIED and/or false imprisonment tort claims under New Mexico law. However, in analogizing Plaintiff's federal claim for purposes of abatement under state law, the Court must be cautious "not to distort the federal claim to fit within the confines of a particular state law." *Bentz*, 769 F.2d at 1188. Federal law is clear that at the core of Eighth Amendment claims such as Plaintiff's is the right of prisoners to maintain their bodily integrity and be free from attack by jail or prison officials. These concerns are squarely addressed by the New Mexico torts of assault and battery. For this reason, the Court finds that Plaintiff's § 1983 claim is most analogous to those claims.

### C. *Plaintiff's § 1983 Claim Does Not Survive Mr. Sena's Death*

The New Mexico statutes governing the question of survivorship provide, in relevant part:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or

---

[5] This approach is taken by a majority of federal circuit courts. *See Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (applying the two-prong excessive force analysis to an Eighth Amendment claim involving the sexual abuse of an inmate by prison official); *Ricks v. Shover*, 891 F.3d 468, 473-74 (3d Cir. 2018) (recognizing that the framework for excessive force claims "has evolved to encompass claims for sexual abuse and harassment by prison officials"); *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (evaluating a claim for sexual abuse by a prison psychologist under the Eighth Amendment excessive force analysis); *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1097 (6th Cir. 2019) (acknowledging that sexual abuse of prisoners could rise to the level of an Eighth Amendment violation and holding that alleged sexual abuse by a prison official could violate the objective prong of the excessive force test under the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075-76 (8th Cir. 1998) (holding that "sexual advancement" toward an inmate did not rise to the level of an Eighth Amendment violation, under the excessive force analysis); *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) ("In evaluating a prisoner's claim, courts consider whether the officials act[ed] with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." (alteration in original) (internal quotation marks and citation omitted)); *Boxer X v. Harris*, 459 F.3d 1114, 1116 (11th Cir. 2006) ("A prisoner asserting an Eighth Amendment claim must demonstrate that the prison guard act[ed] with a sufficiently culpable state of mind and that the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." (internal quotation marks and citation omitted)).

> fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same. The cause of action for wrongful death and the cause of action for personal injuries, shall survive the death of the party responsible therefor.

NMSA 1978, § 37-2-1.

> No action pending in any court shall abate by the death of either, or both, the parties thereto, except an action for libel, slander, malicious prosecution, assault or assault and battery, for a nuisance or against a justice of the peace [magistrate] for misconduct in office, which shall abate by the death of the defendant.

NMSA 1978, § 37-2-4.

Here, Plaintiff filed her Complaint on August 9, 2018. [Doc. 1]. On December October 8, 2018, Mr. Serna's counsel filed a statement notifying the Court and the parties that Mr. Serna had passed away on August 24, 2018. [Doc. 6]. Because this case was pending at Mr. Serna's death, Section 37-2-4, rather than Section 37-2-1, applies. *See Padilla v. Estate of Griego*, 1992-NMCA-021, ¶ 10, 113 N.M. 660, 830 P.2d 1348 ("Section 37-2-4 applies only when death occurs while an action is pending; it describes which pending actions abate when one of the parties dies."); *Littell v. Allstate Ins. Co.*, No. 03-CV-00493, 2003 WL 27385093, at *3-4 (D.N.M. July 30, 2003) ("[W]hile it may not be significant that it is the individual defendant who died rather than a plaintiff, the salient factor is that the defendant died *after* the lawsuit was already filed and pending. The reason this distinction is important is because it implicates [Section 37-2-4 rather than Section 37-2-1]." (emphasis in the original)). Accordingly, Plaintiff's claim, which for purposes of the application of Section 37-2-4 is most analogous to an assault or assault and battery claim under New Mexico law, does not survive Mr. Serna's death.

To the extent that Plaintiff relies on *Padilla* to call into the question the applicability of Section 37-2-4 to her claims, such reliance is misplaced. *Padilla* involved the interpretation of 37-2-1, which is not at issue in the instant case. *See Padilla*, 1992-NMCA-021, ¶ 13. To the extent

that the New Mexico Court of Appeals raised questions regarding potential inconsistencies between Section 37-2-1 and Section 37-2-4 or constitutional questions regarding Section 37-2-4 in dicta, the Court also invited the New Mexico legislature to address those questions. *See Padilla*, 1992-NMCA-021, ¶ 13. Nonetheless, the New Mexico legislature has not done so in the approximately 27 years since the *Padilla* decision.

Plaintiff's argument that abatement of her claims under Section 37-2-4 is inconsistent with the policies underlying federal civil rights statutes is similarly unavailing. Plaintiff contends that construing Section 37-2-4 to "bar any assault and battery claim" would "prevent any victim of an unconstitutional act of excessive force from recovering if the perpetrator happens to die while the case is pending," significantly restricting the amount of actions that survive. [Doc. 14, p. 22]. The United States Court of Appeals for the Tenth Circuit rejected a similar argument in *Pietrowski*. *See Pietrowski*, 134 F.3d at 1008.

In *Pietrowski*, the Court held that an Oklahoma survivorship statute similar to Section 37-2-4, which provided abatement upon death for claims of libel, slander, and malicious prosecution, was not inconsistent with federal law. *See Pietrowski*, 134 F.3d at 1008 ("Although [the Oklahoma survivorship statute] does adversely affect § 1983's goal of compensating injured parties, the effect is limited in scope, abating only those libel, slander, or malicious prosecution actions in which a defendant dies before a verdict is rendered. Further, in light of the nineteenth century common law rule extinguishing all personal injury claims upon either party's death, the statute actually serves to further § 1983's compensation goal by providing for the survival of such actions in most cases." (internal quotation marks and citation omitted)). Moreover, the United States has given deference to survival statutes such as Section 37-2-4 and the Oklahoma statute at issue in *Pietrowski*, which reverse the common law rule under which all personal injury claims were extinguished upon a

11

party's death. *See Robertson,* 436 U.S. at 589-90 (holding state survivorship statutes "provide[ ] the principal reference point in determining survival of civil rights actions"); *Moor v. County of Alameda,* 411 U.S. 693, 703 n. 14, (1973) (noting propriety of adopting state survivorship statute reversing common law rule).

Like the statute at issue in *Pietrowski*, Section 37-2-4 is limited in scope, applying only to actions involving *pending* claims for "libel, slander, malicious prosecution, assault or assault and battery, for a nuisance or against a justice of the peace [magistrate] for misconduct in office" in which a defendant dies before a verdict is rendered. *See* § 37-2-4 (alteration in original). Even if the number of such actions is greater than those at issue in *Pietrowski* due to the inclusion of assault and battery claims in those abated under Section 37-2-4, the *overall* impact on § 1983 litigation does not render the statute generally inhospitable to the survival of § 1983 claims. *See Robertson,* 436 U.S. at 589-90; *Pietrowski*, 134 F.3d at 1008.

In sum, the Court finds that Plaintiff's § 1983 claim is most analogous to the New Mexico torts of assault and battery, which do not survive under the New Mexico survival statute. *See* § 37-2-4. As nothing in this opinion requires the Court to resolve a question of state law on which there is no clear controlling New Mexico precedent, it is not necessary to certify any of the questions presented here to the New Mexico Supreme Court. *See* Rule 12-607; *Pino v. United States*, 507F.3d 1233, 1236 (10th Cir. 2007)). Thus, Plaintiff's request for certification to the New Mexico Supreme Court is denied. [Doc. 14, pp. 22-24]. Further, the Court finds that that a hearing would not materially assist the Court its determination of this matter. For that reason, and in furtherance of the preference of the United States District Court for the District of New Mexico for judicial economy as set forth in D.N.M. LR-Civ. 7.6(a), the Court will not set a hearing on this matter.

## IV. CONCLUSION

For the foregoing reasons, the *Motion to Dismiss Based on Death of Defendant* [Doc 7] is granted and Defendant's Request for Oral Argument [Doc. 17] and Amended Request for Oral Argument [Doc. 20] are denied. *See* D.N.M. LR-Civ. 7.6(a) ("A motion will be decided on the briefs unless the Court sets oral argument.").

**IT IS SO ORDERED.**

                                              JERRY H. RITTER
                                              UNITED STATES MAGISTRATE JUDGE
                                              Presiding by Consent